# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHERYL CHASE and RHODA CHASE, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | 3:04cv588 (MRK) |
| | : | |
| EUGENE COHEN and | : | |
| DESIGN CONCEPTS INTERNATIONAL, INC., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

In this case, Plaintiffs, Cheryl Chase and Rhoda Chase, seek confirmation of an arbitral award pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 9. Defendants, Eugene Cohen and Design Concepts, object to confirmation of the award on the ground that the arbitrator exceeded his powers and failed to issue a final and definite award under § 10(a)(4) of the FAA, manifestly disregarded the law, and issued an award that is contrary to public policy. Defendants' objections have no merit and accordingly, the Court GRANTS Plaintiffs' Motion to Confirm Arbitration Award and Enter Judgment [doc. # 51]. Moreover, construing Defendants' Objection to Motion to Confirm Arbitration Award and Enter Judgment [doc. # 54] as a motion to vacate the award, the Court DENIES Defendants' Objection.

## I.

The parties' underlying dispute stems from a contract for customized kitchen cabinets. On October 15, 2001, Design Concepts International, Inc. ("Design Concepts"), which is owned by Eugene Cohen and his wife Rose Cohen, entered into a contract with Cheryl Chase and her mother, Rhoda Chase ("the Chases") for the sale and installation of customized "Neff" kitchens in the Chases'

West Hartford, Connecticut residences.[1]  The kitchens were designed and manufactured by Neff

Kitchen Mfg. Ltd. ("Neff Kitchen"), a Canadian-based company, which is not party to this action.

Before work began on the Chases' kitchens, Rhoda Chase paid Design Concepts for the work to be

done on her kitchen and Landar Associates Limited Partnership, which owns the property in which

Cheryl Chase resides and in which she appears to be a limited partner, paid for the work to be done

on Cheryl Chase's kitchen.

Following installation of the kitchen cabinets, the Chases discovered that the cabinetry did

not meet their expectations and had workmanship and installation defects.  *See* Defendants' Brief

Objecting to Motion to Confirm Arbitration Award and Enter Judgment [doc. # 55] [hereinafter

Defs.' Objecting Brief], App. 3.  On October 7, 2002, they filed suit against Neff Kitchen and Design

Concepts in Connecticut Superior Court in Hartford.  *See Chase v. Neff Kitchen*, No. HHS-CV-02-

0820079-S (Conn. Super. Ct. filed Oct. 7, 2002).  On March 5, 2004, they filed another complaint

in the Superior Court in Hartford against Mr. Cohen, Ms. Cohen, Design Concepts, and Neff

Kitchens, alleging violations of the Connecticut Home Improvement Act ("HIA"), Conn. Gen. Stat.

§ 20-418, *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat.

§ 42-110a, *et seq.  See* Notice of Removal [doc. # 1].  On April 7, 2004, Defendants removed the

second lawsuit to federal court, *see id.*, and later moved to dismiss the action on the grounds that this

Court lacked personal jurisdiction over Neff Kitchens, and Mr. and Ms. Cohen.  *See* Motion to

Dismiss for Lack of Jurisdiction [doc. # 9].  They also moved to dismiss the case on the ground that

---

[1] The contract's arbitration clause provided that "[a]ny controversy or claim arising out of or related to this agreement or any alleged breach thereof should be settled by binding arbitration in accordance with the rules of the American Arbitration Association.  Judgment upon any award rendered by such arbitrator may be entered in any court having jurisdiction."  Defs.' Objecting Brief, App. 1.

this Court lacked subject matter jurisdiction over Design Concepts because a "valid contractual arbitration clause exists which precludes the Plaintiff's [sic] from proceeding in court against the Defendant." *Id.* at 2. On September 29, 2004, the Chases amended their Complaint in this action, dropping Design Concepts, Neff Kitchens and Ms. Cohen as defendants and proceeding only against Mr. Cohen. *See* Amended Complaint [doc. # 20]. In light of their Amended Complaint, the Chases did not address Defendants' arguments regarding subject matter jurisdiction. However, they opposed Defendants' Motion to Dismiss [doc. # 9] as to Mr. Cohen, arguing that this Court did in fact have personal jurisdiction over him. *See* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss [doc. # 19]. On December 29, 2004, the Court denied Defendants' Motion to Dismiss [doc. # 9]. *See* Ruling & Order [doc. # 31].

On January 31, 2005, the parties, with the exception of Ms. Cohen, entered into an Agreement to Submit to Binding Arbitration, which provided that

> [t]he parties . . . agree to submit all controversies related directly and indirectly in regard to the purchase and installation of two kitchens in claimants' West Hartford, Connecticut homes to binding arbitration . . . .The claimants shall stay the actions pending in the State of Connecticut Superior Court entitled <u>Cheryl Chase and Rhoda Chase v. Neff Kitchen Mfg. Ltd. and Design Concepts International Inc.</u> Docket No. CV-02-0820079 S, and the matter entitled <u>Cheryl Chase and Rhoda Chase v. Eugene Cohen, Design Concepts International, Inc. d/b/a/ Neff by Design Concepts International, Inc. and Neff Kitchens Mfg. Ltd.</u> Pending in the U.S. District Court, District of Connecticut, Civil Action No. 3:04CV00688 (MRK) pending decision of the arbitrator. The parties may submit the arbitration award to the courts to enter judgment thereon.

*See* Motion for Stay [doc. # 37], Ex. A ("Arbitration Agreement"). Pursuant to this Arbitration Agreement, on February 28, 2005, Plaintiffs moved to stay this case pending arbitration, *see* Motion for Stay [doc. # 37], and on March 3, 2005, this Court granted the stay. *See* Order [doc. # 38]. On March 2, 2005, the Chases also moved to stay their state court action, and on March 21, 2005, the

Connecticut Superior Court granted the requested stay. *See Chase*, No. HHS-CV-02-0820079-S, Motion for Stay (Granted) [doc. # 145.00].

In accordance with the parties' Arbitration Agreement, the Chases filed a Demand for Arbitration in which they asserted a number of claims. Defs.' Objecting Brief, App. 2 ("Demand for Arbitration"). The Chases argued that all of the Defendants breached the contract by failing to deliver the installed kitchens as promised. As to Neff Kitchen, the Chases argued that Mr. Cohen and Design Concepts were acting as agents of (and/or joint venturers with) Neff Kitchen. The Chases also asserted five CUTPA-related claims. First, they alleged that the underlying contract violated the HIA, Conn. Gen. Stat. §§ 20-418 *et seq*., which constitutes a *per se* violation of CUTPA. *See* Conn. Gen. Stat. § 20-427(c). Second, they claimed that Mr. Cohen, individually and not as a representative of Design Concepts, violated the HIA, and thus CUTPA, because he was not licensed or registered in Connecticut as a home improvement salesman or contractor, as required by Connecticut General Statutes § 20-420(a) and § 419(3), (4), and (9). In addition, they alleged that he violated the HIA because he acted as a home improvement salesman for an unregistered contractor, i.e., Design Concepts, in violation of Connecticut General Statutes § 20-420(c). Third, the Chases claimed that Design Concepts and Neff Kitchen violated the HIA, and thus CUTPA, because they were not licensed or registered in Connecticut as home improvement contractors, and further because they hired Mr. Cohen, who was also unlicensed and unregistered, in violation of Connecticut General Statutes § 20-420(b). Fourth, the Chases asserted that Mr. Cohen, by making misrepresentations relating to the contract and Defendants, committed a "deceptive act or practice" in violation of CUTPA. Finally, the Chases alleged that all Defendants violated the HIA, and thus CUTPA, because the contract did not meet the requirements of the HIA under § 20-429(a) of the

Connecticut General Statutes. Rhoda Chase sought rescission, punitive damages, costs and attorneys' fees. Cheryl Chase sought specific performance, punitive damages, costs and attorneys' fees.

Following hearings, an arbitrator from the Construction Arbitration Tribunal of the American Arbitration Association ("AAA") rendered an award on April 2, 2007. Defs.' Objecting Brief, App. 10 ("Arbitration Award"). On April 26, 2007, he issued a revised opinion to correct a typographical error, replacing a reference to "Rhoda Chase" with "Cheryl Chase." *Id.* In his two-page award, the arbitrator rejected all claims against Neff Kitchen, *see id.* ¶ 1, but he found for the Chases on most of the other claims. On the breach of contract claims, the arbitrator found that "Design Concepts, acting through [Mr.] Cohen," entered into the contract with Plaintiffs and that Design Concepts had substantially breached the contract. *See id.* ¶¶ 2-3. On the CUTPA claims, the arbitrator ruled that "Design Concepts and [Mr.] Cohen, individually were in violation of [the HIA], which is a per se violation of [CUTPA]." *Id.* ¶ 4. In addition, the arbitrator found that Design Concepts was solely responsible for the design of the Chases' kitchens and that each of the Chases resided in or owned the relevant homes. *See id.* ¶¶ 5-6. Further, he concluded that damages alone were inadequate to compensate the Chases, and therefore, the arbitrator ordered rescission "based upon Design Concepts' substantial breach of contract, and based upon violations of CUPTA [sic] by [Mr.] Cohen, individually, and by Design Concepts." *Id.* ¶ 7. Finally, the arbitrator found that the Chases sustained "ascertainable damages" and awarded "punitive damages, based upon violations of CUPTA [sic] by [Mr.] Cohen, individually and by Design Concepts." *Id.* ¶ 8-9.

Accordingly, the arbitrator ordered the contract rescinded, directed Design Concepts and Mr. Cohen to refund the sum of $69,500 to each of the Chases within 30 days of the award becoming

final, and ordered the Chases to make all materials available to be reclaimed by Design Concepts within 60 days of the award becoming final. The arbitrator also ordered Design Concepts and Mr. Cohen to pay Rhoda Chase $35,000 and Cheryl Chase $15,000 in ascertainable and punitive damages, and to pay each of them $50,000 for attorneys' fees and $8,240 for costs. *See id.* at 2. As to the administrative fees of the AAA ($3,630) and the compensation for the arbitrator ($21,080.00), the arbitrator ordered those fees to be borne 30% by the Chases and 70% by Mr. Cohen and Design Concepts.[2]

On May 2, 2007, the Chases filed the pending Motion to Confirm Arbitration Award and Enter Judgment [doc. # 51] against Mr. Cohen, who, as previously noted, was the only remaining Defendant in the Chases' federal lawsuit following the filing of the Chases' Amended Complaint [doc. # 20]. Apparently confused as to which Defendant belonged in which lawsuit, both Mr. Cohen and Design Concepts objected to the Chases' Motion to Confirm on May 21, 2007 on various grounds, *see* Defs.' Objecting Brief, which were clarified in supplementary briefing. *See* Defendants' Supplemental Brief to Objection [doc. # 66]. No party objected to the arbitrator's award as it relates to Neff Kitchen. The Chases then filed a response to Defendants' Objection in which they asked the Court for leave to amend their Complaint to add Design Concepts as a defendant for purposes of their Motion to Confirm Arbitration Award. *See* Memorandum in Response to Defendants' Objection to Motion to Confirm Arbitration Award and Enter Judgment [doc. # 58] . The Chases argued that adding Design Concepts would streamline the process of confirmation and they offered to withdraw their state court action once the Court granted them leave to amend their Complaint.

---

[2] The arbitrator ordered Mr. Cohen and Design Concepts to reimburse the Chases $6,067, representing the portion of the administrative and arbitration fees that the Chases had already paid and that were in excess of their share of apportioned costs and fees.

*See id.* at 2. On July 5, 2007, the Court granted the Chases leave to amend to add Design Concepts.

*See* Order Granting Motion for Leave to Amend Complaint [doc. # 69].

In their objections to confirmation of the award, Mr. Cohen and Design Concepts contend

that the Court should reject the arbitrator's award because a mutual, final, and definite award upon

the subject matter was not made under § 10(a)(4) of the FAA, because the arbitrator manifestly

disregarded the law, and because the award is contrary to public policy.[3] Before delving into

Defendants' objections, the Court notes that in accordance with the parties' wishes, there is no

transcript of the arbitration proceedings in this matter. *See* Rule 27 (Stenographic Record), AAA

Construction Industry Arbitration Rules and Mediation Procedures, Defs.' Objecting Brief, App. 14,

_____

[3] The Court relies primarily on Defendants' framing of their objections as clarified in Defendants' Supplemental Brief to Objection [doc. # 66]. In their initial objection, Defendants made seven somewhat difficult-to-decipher claims, which appeared to be based on 9 U.S.C. § 10(a)(4) and manifest disregard of the law. Defs.' Objecting Brief. The seven objections were as follows: (1) the award fails to distinguish between the amounts to be paid by Cohen in his representative and individual capacity; (2) it awards punitive damages joint and severally; (3) enforcement would be difficult; (4) the arbitrator awarded damages for the CUTPA violation without finding a direct relationship between the ascertainable loss and the prohibited conduct, or in the alternative, the damages were excessive; (5) the arbitrator rendered a decision without all the necessary parties to the action, thus failing to provide complete relief; and (6) in awarding both rescission and damages for breach of contract, the arbitrator ignored well-defined, explicit, and clearly applicable contract law principles. Defendants also raised three claims that they collectively labeled "Other Evidence of the Arbitrator's Manifest Disregard of the Law."

In Defendants' Supplemental Brief to Objection [doc. # 66], however, Defendants re-framed their claims, and asserted them under three separate grounds. Despite their express effort at re-categorizing their claims, Defendants nonetheless claimed that they continued to assert all arguments raised in their initial objection. *See* Defs.' Supp. Br. to Obj. [doc. # 66], at 1. The Court will therefore rely on Defendants' Supplemental Brief to Objection [doc. # 66] for its framing of the issues, except as to those unaddressed in the Supplemental Brief, namely, (2) and (3) above and the three claims Defendants' label "Other Evidence of the Arbitrator's Manifest Disregard of the Law."

In addition, because the Court previously granted the Chases leave to amend their Complaint, Order Granting Mot. for Leave to Amend Compl. [doc. # 69], it will not discuss those portions of the parties' briefs that are addressed to the amendment. Further, the Court will treat those arguments made as to Mr. Cohen in Defendants' Supplemental Brief to Objection [doc. # 66] as applying to Design Concepts as well.

at 17 ("AAA Rules").  The Court's review, therefore, is based upon the arbitrator's "Limited List of Findings and Legal Conclusions" and "Award" as set out in the  Arbitration Award.  *See United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."); *IBEW, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998).

## II.

### A.

Section 10(a) of the FAA authorizes a district court to vacate an arbitration award on only four specific and limited grounds:

> (1)     where the award was procured by corruption, fraud or undue means;
>
> (2)     where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition to these statutory grounds, the Second Circuit recognizes two non-statutory grounds for vacating arbitral awards.  The first is where an award is in manifest disregard of the law.  *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003); *Success Sys., Inc. v. Maddy Petroleum Equip., Inc.*, 316 F. Supp. 2d 93 (D. Conn. 2004) (discussing the origins and parameters of the doctrine).  The second judge-made

ground for vacatur is where an award is contrary to explicit public policy. *See St. Mary Home, Inc. v. Serv. Int'l Union, Dist. 1199*, 116 F.3d 41, 45-47 (2d Cir. 1997); *Niagara Mohawk*, 143 F.3d at 715-17.

## B.

Defendants object to the arbitrator's award on the grounds that the arbitrator "exceeded [his] powers," and "so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. §10(a)(4). None of Defendants' arguments has merit.

Defendants first argue that the arbitrator exceeded his powers in two ways: by awarding joint and several damages against Defendants, and by ordering Cheryl Chase, who resides in, but does not own, the home in which her kitchen was installed, to return the cabinetry. The Second Circuit has "'consistently accorded the narrowest of readings' to the FAA's authorization to vacate awards pursuant to § 10(a)(4)." *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (quoting *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002)). To assess whether an arbitrator's decision violates § 10(a)(4), a court's "inquiry focuses on whether the arbitrator[] had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[] correctly decided that issue." *Id.* (internal citation omitted). "Where an arbitration clause is broad, . . . arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself." *Id.*

Defendants argue that the arbitrators' award of joint and several liability against them was neither anticipated by the agreement to arbitrate nor requested by the parties in their submissions. Defs.' Supp. Br. to Obj. [doc. # 66], at 10-11. Under *Banco de Seguros*, Defendants' claim must fail.

Defendants and the Chases agreed to "submit *all controversies related directly and indirectly* in regard to the purchase and installation of two kitchens in claimants' West Hartford, Connecticut homes to binding arbitration . . . ." Arbitration Agreement at 1 (emphasis added). It is difficult to imagine more capacious language, and it is certainly broad enough to permit the arbitrator to impose joint and several liability on Defendants. *See Bell v. Cendant Corp.*, 293 F.3d 563 (2d Cir. 2002) (finding that broad language of arbitration clause left to arbitrator question of arbitrability and whether corporation had waived right to arbitrate); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 73 (2d Cir. 1997) (stating that agreement containing "sweeping arbitration clause" should be broadly construed).

Nonetheless, Defendants argue that the Arbitration Agreement did not anticipate joint and several liability because the Chases initially brought their claims in two different courts against two different defendants. This argument lacks credibility given that the parties agreed in their Arbitration Agreement to stay *both* the state and federal actions, clearly anticipating that the arbitrator's award would cover all of the issues raised in both actions. The parties' Arbitration Agreement was negotiated and signed after the parties' dispute had arisen, and they each had counsel while negotiating the Agreement. If either party had intended to limit the arbitrator's powers in any way they could have done so in the Arbitration Agreement. But they did not, and the Court will not now introduce a limitation on the arbitrator that the parties themselves did not impose.

Finally, Defendants' argument that the Chases did not request joint and several relief is also unconvincing. In their Demand for Arbitration, the Chases sought relief from Mr. Cohen, Design Concepts, and Neff Kitchen. *See* Demand for Arbitration at 1, 4. Further, the Demand states that "claimants each seek punitive damages and other damages . . . ." *Id*. at 7. In sum, the Arbitration

Agreement and parties' submissions all confirm that the arbitrator had ample authority to impose joint and several liability.[4]

Next, Defendants argue that the arbitrator "exceeded his powers since he ordered [Cheryl Chase] to make fixtures attached to a piece of property to be returned . . . despite the fact that[, Landar,] the owner of the premises[,] is not a party to this suit." Defs.' Objecting Brief at 15; Defs.' Supp. Br. to Obj. [doc. # 66], at 12. Defendants' argument relies on a characterization of the cabinets as "fixtures." However, that argument presents a question of fact, which falls squarely within the arbitrator's ambit of authority. *See Westerbeke*, 304 F.3d at 213 (findings of fact are the province of arbitrator); *ATC P'ship v. Windham*, 268 Conn. 463, 479 (2004) ("The question as to whether a particular piece of property is personalty or a fixture is a question of fact."). As such, the arbitrator cannot be said to have exceeded his powers in making such an finding.

Defendants also invoke the "imperfect execution" aspect of § 10(a)(4) and contend that the arbitrator's award should not be confirmed because it is not "mutual, final or definite." An award is definite and final if it "resolve[s] all the issues submitted to arbitration, and [does so] definitively enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998). Defendants advance three arguments in support of this claim, none of which has merit.

First, they appear to contend that the award is not definite because it fails to distinguish

---

[4] Defendants' assertion that the arbitrator had no factual basis on which to find them jointly and severally liable is a question of fact that cannot be reviewed by this Court in light of the narrow scope of review of arbitral awards under 9 U.S.C. § 10(a)(4). *See Banco de Seguros*, 344 F.3d at 262; *Westerbeke*, 304 F.3d at 213.

between the damages Mr. Cohen must pay as a representative of Design Concepts and those he must pay as an individual. This is so, Defendants say, because "it is impossible to determine whether the ascertainable losses Mr. Cohen is being asked to pay are a result of a violation of CUPTA [sic] in his capacity as a representative of Design Concepts, or in his capacity as an individual." Defs.' Supp. Br. to Obj. [doc. # 66], at 12. Defendants cite to *Lyle v. Rodgers*, 18 U.S. 394 (1820), a pre-FAA decision, in support of their arguments. *Lyle* held that where claims against a party as an individual and as an administrator are submitted to arbitration, the resulting award must show in what capacity the respondent is liable, otherwise the award may be void for uncertainty.

Contrary to Defendants' assertions, the arbitrator's award makes clear that any findings of CUTPA violations against Mr. Cohen are in his individual, not representative, capacity. For example, paragraph four of the arbitrator's Limited List of Findings and Legal Conclusions states that "Design Concepts and [Mr.] Cohen, *individually*, were in violation of [the HIA], which is a per se violation of [CUTPA]," paragraph seven awards rescission "based upon violations of CUPTA [sic] by [Mr.] Cohen, *individually*, and by Design Concepts," and paragraph nine states that plaintiffs are entitled to punitive damages "based upon violations of CUPTA [sic] by [Mr.] Cohen, *individually*, and by Design Concepts." Arbitration Award at 2 (emphasis added). Furthermore, paragraphs B and C of the award itself each state that the awards are made against "Design Concepts and [Mr.] Cohen, *individually*." *Id.* at 3 (emphasis added). The sole basis on which Defendants appear to found their argument is the arbitrator's statement that "Claimants have sustained ascertainable damages entitled to relief." Arbitration Award at 2, ¶ 8. However, that statement cannot be read in isolation from the arbitrator's more detailed findings mentioned above. Therefore, there is no uncertainty about the award, and *Lyle* is inapposite.

12

Defendants alternatively contend that the award is not final within the meaning of § 10(a)(4) because it does not distinguish between those damages that Mr. Cohen must pay and those that Design Concepts must pay. Defs.' Supp. Br. to Obj. [doc. # 66], at 11-12. In support of this argument, Defendants assert that the arbitrator found Design Concepts and Mr. Cohen liable for different violations, but nonetheless ordered them to pay damages jointly to the Chases. The principal difficulty with this argument is that the arbitrator did no such thing. Instead, the arbitrator found Design Concepts liable for breach of contract, but he also found both defendants liable for violations of the HIA, and thus CUTPA. An arbitrator has issued a final and definite decision if he has decided "the rights and obligations of the two parties with respect to the issues submitted." *Rocket Jewelry Box*, 157 F.3d at 176. That is precisely what the arbitrator did in this case. Therefore, the Court rejects Defendants' argument to the contrary.

Second, Defendants object to the award under § 10(a)(4) because the award imposes liability on Mr. Cohen under a contract to which he was not a party. Defs.' Supp. Br. to Obj. [doc. # 66], at 12. How this is so completely escapes the Court. Although the arbitrator found that "Design Concepts, acting through [Mr.] Cohen, contracted to design 'custom' kitchens" for the Chases, Arbitration Award at 1, ¶ 2, the arbitrator made it absolutely clear that Design Concepts alone breached the contract with the Chases. *See id.* ¶ 3. The arbitrator's reference to rescission of the contract in paragraphs B and C of the award is thus founded on the contract between the Chases and Design Concepts and affects Mr. Cohen only to the extent to which he was acting for Design Concepts in negotiating and entering into the contract. *See id.* at 2, ¶¶ B-C. That this is the arbitrator's meaning is apparent from the fact that he directs the Chases to make the cabinets available to be reclaimed by Design Concepts, and not Mr. Cohen individually. In sum, the award

13

is clear that Mr. Cohen was held liable for CUTPA violations and not for breach of contract. *See id.* at 1, ¶¶ 4, 7, 9.

Third, Defendants appear to argue that the award is in violation of § 10(a)(4) because it orders that money paid to Design Concepts by Landar should be refunded to Cheryl Chase. Defs.' Supp. Br. to Obj. [doc. # 66], at 13. Defendants do not explain how this might violate § 10(a)(4). However, presumably their argument is that an award cannot be final or definite where money paid by one party is refunded to another party since the paying party might later seek a refund. Yet, Defendants offer no support for their implicit contention that a non-party to a contract, such as Landar, could sue to recoup costs. In fact, Connecticut law indicates otherwise. *See Barnett & Shoflick, P.C. v. Sonitrol Sec. of Hartford, Inc.*, No. CV044002307S, 2005 WL 2857936, at *2 (Conn. Super. Ct. Oct. 13, 2005) ("It is well settled that 'one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . . .'" (quoting *Coburn v. Lenox Homes, Inc.*, 173 Conn. 567, 570 (1977))). Therefore, Defendants' objections to the arbitrator's award under § 10(a)(4) fail.

### C.

As has become increasingly popular among parties faced with an unfavorable arbitration award, Mr. Cohen and Design Concepts also object to confirmation of the award on the grounds that the arbitrator manifestly disregarded the law. In particular, they argue that the Court should refrain from confirming the award because the arbitrator awarded punitive damages under CUTPA, awarded rescission and monetary damages, and awarded a remedy without having jurisdiction over all necessary parties to the action. Defs.' Supp. Br. to Obj. [doc. # 66], at 2. In addition, they claim that the arbitrator manifestly disregarded the law by awarding joint and several punitive damages and by

issuing an award that "would be difficult to enforce." Defs.' Objecting Brief at 9-15. Defendants have failed to make the showing necessary to prove manifest disregard of the law on any of their claims. Therefore, the Court rejects Defendants' objections to confirmation of the award on this ground.

In *Success Systems*, this Court discussed in detail the manifest-disregard-of-the-law ground for vacating an arbitration award. After canvassing Second Circuit case law, the Court set forth four principles governing arguments based upon manifest disregard of the law:

> First, the party seeking to overturn the arbitral award bears the burden of demonstrating that the arbitrator manifestly disregarded the law. Furthermore, the showing required to void an arbitration decision on the ground of manifest disregard is quite high. . . . Second, a movant must establish more than a mistake of law on the arbitrator's part. A mere error of law or the failure of the arbitrators to understand or properly apply the law is insufficient. . . . Third, to make such a showing, the movant must satisfy a two-pronged test that has both an objective and a subjective component. Both prongs must be satisfied before a court may find a manifest disregard of the law. . . . The objective component requires the movant to demonstrate that the governing law alleged to have been ignored by the arbitrators was well-defined, explicit, and clearly applicable. . . . The subjective component of the test looks to the knowledge actually possessed by the arbitrators and requires the movant to demonstrate that the arbitrator was aware of the existence of the clear legal principle and appreciated that it governed the case but nonetheless decided to ignore, or rule in defiance of, that clear governing legal principle. . . . Fourth and finally, underscoring that manifest disregard is about defiance or wilful flouting of the law and not about mere legal errors, the Second Circuit has made it clear that a court must uphold an arbitrator's award against a manifest disregard challenge so long as the court can glean even a barely colorable justification for the award from the record.

*Success Sys.*, 316 F. Supp. at 99-100 (internal citations and quotation marks and alterations omitted).

*See also Porzig v. Dresdner,* – F.3d –, 2007 WL 2241592, at *4 (2d Cir. 2007) ("An arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate 'both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and

(2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case.'"

(quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004))).

Defendants first argue that the arbitrator manifestly disregarded the law by awarding punitive damages under CUTPA. As already noted, the arbitrator awarded "punitive damages based upon violations of CUPTA [sic] by [Mr.] Cohen, individually and by Design Concepts." Arbitration Award at 1, ¶ 9. Defendants state that "[i]t is undisputable that punitive damages under CUPTA [sic] for a violation of HIA, where there is no relationship between the ascertainable loss to the Claimants and the violation of HIA are improper." Defs.' Supp. Br. to Obj. [doc. # 66], at 5. It seems apparent that this argument is not based upon the law but instead is founded on Defendants' contention that the facts did not support the arbitrator's award. However, findings of fact are the province of the arbitrator, not this Court. *See Westerbeke*, 304 F.3d at 213. And to the extent that Defendants are making a claim of "manifest disregard of the evidence," it is sufficient to note that the Second Circuit does not recognize this ground as a basis for vacatur. *See Wallace*, 378 F.3d at 193 (quoting *Success Sys.*, 316 F. Supp. at 94).[5]

Defendants next argue that the arbitrator manifestly disregarded the law by awarding rescission as well as monetary damages for a breach of contract claim. Putting aside for the moment the requirements of the manifest-disregard-of-the-law standard, it is not apparent that the arbitrator's award does what Defendants contend. For as already noted, the arbitration award provides that

---

[5] The Court also notes that Defendants fail to point to any "well-defined, explicit, and clearly applicable" law that sets forth when punitive damages can be awarded under CUTPA based upon violations of the HIA. In fact, Defendants themselves concede the lack of clarity on this point: "Case law is not very direct or on point in the exactness as to when a per se violation of the [HIA] resulting in a CUPTA [sic] violation, amounts to the award of punitive damages." Defs.' Objecting Brief at 13.

"Damages alone are inadequate to compensate Claimants for their losses, and the remedy of RECISSION [sic] is suitable based upon Design Concepts' substantial breach of contract, and based upon violations of CUPTA [sic] by [Mr.] Cohen, individually, and Design Concepts." Arbitration Award, at 1, ¶ 7. Thereafter, without explaining whether based on the breach of contract or CUTPA violations, the arbitrator also finds that "[c]laimants have sustained *ascertainable* damages entitled to relief." *Id.*, at 1, ¶ 8 (emphasis added). The arbitrator goes on to find that "[c]laimants are entitled to punitive damages *based upon violations of CUPTA* [sic] by [Mr.] Cohen, individually and by Design Concepts." *Id.* at 1, ¶ 9 (emphasis added). Then in providing relief, the arbitrator awards the Chases "ascertainable and punitive damages." *Id*. at 1-2, ¶¶ 8, B-C.

From the above, it is clear that the awards for punitive damages were based on the CUTPA violations, and it is entirely reasonable to conclude that the award of "ascertainable" damages was also based on the CUTPA violations, and not the breach of contract claims. "[A] court must uphold an arbitrator's award so long as it can glean 'even a barely colorable justification' for the award from the record." *Success Sys.*, 316 F. Supp. at 100. A reading of the ascertainable damages as grounded in the CUTPA violations satisfies this test, and Defendants appear to concede that such awards are permitted under CUTPA. *See* Conn. Gen. Stat. § 42-110g(d) ("In any action brought under [CUTPA], the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief.").

Third, Defendants argue that the arbitrator manifestly disregarded the law by issuing a remedy without having jurisdiction over all necessary parties to the action. If this claim looks familiar, it is because Defendants also asserted it as a ground for their § 10(a)(4) objection. In this iteration of the argument, however, Defendants contend that the arbitrator was in manifest disregard

of the law because he issued an award without the presence of Landar, which owns the home in which Cheryl Chase resides and made payments for the work Defendants did in Cheryl Chase's home. Defendants assert that Landar is a necessary party because Cheryl Chase, a mere resident, does not have the authority to return the cabinets and materials to Defendants and because Landar should be the recipient of any refunds ordered by the arbitrator.[6]

Again, Defendants fail to show any "well-defined, explicit and clearly applicable" law on this point. First, whether Cheryl Chase has the authority to remove and return the cabinets to Defendants depends on whether the cabinets are "fixtures," which, as noted, is a question of fact that is within the arbitrator's power to decide and beyond this Court's power to review. *See Westerbeke*, 304 F.3d at 213; *ATC P'ship*, 268 Conn. at 479. Moreover, the arbitrator's apparent finding that Landar's presence was not required to issue an award was not in manifest disregard of the law. *See ConnTech Dev. Co. v. Univ. of Conn. Ed. Prop. Inc.*, 102 F.3d 677 (2d Cir. 1996) ("'A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983))); *Sun Oil Trading Co. v. Oxbow Res. Corp.*, No. 86 CIV. 3660 (JFK), 1989 WL 46603, at *2 (S.D.N.Y. Apr. 28, 1989) (finding that an arbitrator was not in manifest disregard of the law where he found that a party to a contract had the authority to receive funds on behalf of a non-party and stating that a finding that a non-party to a contract was a necessary party to an arbitration proceeding would be tantamount to changing the contract terms); *Sturman v. Socha*,

---

[6] Although Defendants did not raise this precise claim before the arbitrator, the Court will consider this issue in view of the fact that Defendants argued that Landar was a "necessary party" and that its presence was necessary to make the arbitration award final. *See* Defs.' Objecting Brief, App. 6, at 21. This argument, read generously, encompasses the claims that Defendants now present to this Court.

191 Conn. 1, at *7 (1983) (distinguishing between necessary and indispensable parties and noting that the former are not required for adjudication of an issue). Accordingly, there is no basis to set aside the award because of the absence of Landar.

Fourth, Defendants assert that the award is manifestly in disregard of the law because punitive damages may not be awarded jointly. Defendants have failed to meet their burden of pointing to "well-defined, explicit, and clearly applicable" law in support of their claim. In fact, the Chases point to several cases in which Connecticut courts have imposed punitive damages jointly. *See, e.g.*, *Tessmann v. Tiger Lee Constr. Co.*, 228 Conn. 42 (1993) (upholding an award of punitive damages against two defendants); *Day v. Gabriele*, 101 Conn. App. 335, 339-340, 349-50 (2007) (same). In light of the foregoing cases, the arbitrator cannot be said to have manifestly disregarded the law. Nonetheless, even if Defendants could show that any such law supports their argument, they would fail to meet the subjective component of the manifest-disregard test because they have offered no evidence that they raised this issue before the arbitrator or that he was even aware of this issue at the time of his ruling.[7]

Finally, Defendants advance three manifest-disregard-of-the-law claims that are collectively labeled "Other Evidence of the Arbitrator's Manifest Disregard of the Law." Defs.' Objecting Brief at 19-20. Defendants' briefing on these claims consists of three short paragraphs. *Id.* There is no

---

[7] In their initial brief objecting to confirmation of the award, filed before this Court's Order permitting the Chases to add Design Concepts as a defendant, *see* Order Granting Mot. for Leave to Amend Compl. [doc. # 69], Defendants also objected to confirmation on the grounds that the arbitrator manifestly disregarded the law by issuing an award that will be "a nightmare to enforce." Defs.' Objecting Brief at 11. This argument is a variant of their objection to the Chases' Motion to Amend, and for the reasons stated in the Court's Order Granting Mot. for Leave to Amend Complaint [doc. # 69], the argument is rejected. All parties are present in this suit and thus enforcement of the award should not be difficult.

merit to any of them.

For one, Defendants argue that the arbitrator's decision to apportion not only costs, but also his compensation, violates both the Arbitration Agreement and the AAA Rules. The Agreement to Submit to Binding Arbitration provides that "[t]he parties shall share equally in the submission costs of this arbitration and any ongoing expenses billed in connection with said arbitration; however, nothing herein shall prevent the arbitrator from awarding costs in rendering a decision in connection with the arbitration." Defs.' Objecting Brief, App. 2. Rule 51 (Expenses) of the AAA Rules provides that "[a]ll other expenses of the arbitration, . . . shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses *or any part thereof* against any specified party or parties." AAA Rules at 22. Furthermore, Rule 44(c) (Scope of Award), which Defendants conveniently do not reference, provides that "[t]he arbitrator may *apportion* such fees, expenses, *and compensation* among the parties in such amounts as the arbitrator determines is appropriate." *Id.* at 20. Therefore, the AAA Rules permit apportionment of both costs and arbitrator compensation, and there is nothing in the parties' Arbitration Agreement to suggest that they intended to prohibit the arbitrator from apportioning costs and fees in accordance with the AAA Rules.

Defendants also argue that by failing to rule on their request for attorneys' fees, the arbitrator did not file a complete award nor follow the law. Their complaint appears to be that even though the arbitrator found against Defendants, he was somehow required to rule on their claim for attorneys' fees based on bad faith, and that his failure to do so was in manifest disregard of the law. The claim fails the manifest-disregard-of-the-law standard for several reasons. For one, Defendants point to no law, even vaguely defined, that the arbitrator might be said to have disregarded.

Moreover, if the arbitrator failed to address one of Defendants' claims, Defendants had the ability to seek a written explanation from the arbitrator. Rule 43 of the AAA Rules expressly permits parties to seek such explanations of the arbitrator's decisions. AAA Rules at 20. Yet, for their own reasons, Defendants chose not to ask for an explanation but instead decided to raise the issue for the first time in this Court. That Defendants may not do under the principles governing manifest disregard of the law. *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998).

Defendants finally appear to claim that by changing the last sentence of the award to refer to "Cheryl Chase" and not "Rhoda Chase," and issuing an amended award, the arbitrator failed to follow the rules of the AAA and "the law." Defs.' Objecting Brief at 20. This claim also has no merit. AAA Rule 47 (Modification of Award) provides that arbitrators may correct any "clerical, typographical, technical or computational errors in the award." AAA Rule at 21. The amendment to the arbitration award in this case clearly falls within the scope of Rule 47. Furthermore, courts have repeatedly stated that an arbitrator retains the power to correct clerical or typographical errors. *See, e.g.*, *Colonial Pa. Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327 (3d Cir. 1991) (finding that an arbitrator can amend an award to correct a mistake that is apparent on the face of his award); *Shore v. Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 477 (2005) (approving the use of AAA Rule 47 to correct an award); 1 Martin Domke, *Domke on Commercial Arbitration*, Arb. § 26:1 (3d ed. 2003) ("[One of the] three limitations on the common-law *functus officio* doctrine . . . [is that] an arbitrator can correct a mistake which is apparent on the face of the award . . . ."). Therefore, there is no basis to deny confirmation of the award because it was amended.

## D.

Defendants' final objection is that "confirmation of the award would result in the violation of public policy by making [Defendants] jointly liable for punitive damages. Defs.' Supp. Br. to Obj. [doc. # 66], at 14. The award does not violate an explicit public policy and thus the Court rejects this objection.

The public policy ground for vacatur has its roots in *W.R. Grace & Co. v. Local Union 759, International Union of United Rubber Workers*, 461 U.S. 757 (1983), in which the Supreme Court held that "[a]s with any contract . . . a court may not enforce a collective-bargaining agreement that is contrary to public policy." 461 U.S. at 766. To warrant non-enforcement, however, the Supreme Court emphasized that such a public policy must be "explicit," "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *Muschany v. U.S.*, 324 U.S. 49, 66 (1945)). In *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987), the Supreme Court emphasized that *W.R. Grace* did not "sanction a broad judicial power to set aside arbitration awards as against public policy," adding that violations must be "clearly shown." *Id.* at 43. In *Saint Mary Home*, the Second Circuit described the *W.R. Grace/Misco* framework as a "severe limitation" on the ability of courts to vacate arbitration awards based on the public policy exception. 116 F.3d at 45. Accordingly, the Second Circuit went on to note that the public policy ground for vacatur would apply only in "rare cases." *Id.* at 46. In *Niagara Mohawk*, the Second Circuit further explained that the public policy exception demands a "result-oriented" exercise in which the court must determine whether the award itself, irrespective of the factual and legal basis for the award, violates public

policy. 143 F.3d at 716-17.[8]  In sum, therefore, these cases instruct that the public policy ground for

vacatur applies only when an arbitration award is clearly shown, on its face, to be in violation of an

"explicit" and "well defined and dominant" policy that is set out in regulations, statutes or case law.

Parties objecting to confirmation of an award on this ground bear the burden of making this

substantial showing.

The Court's review of cases within the Second Circuit addressing the public policy exception

reveals that it is rarely applied to vacate an award.  Most public policy challenges have arisen  in the

context of labor arbitration decisions.  In all but two of the cases that this Court has reviewed in the

Second Circuit, courts have upheld arbitrators' awards against public policy challenges.[9]  Those two

_____

[8]  Recently, in *Porzig,* 2007 WL 2241592, at *4, a panel of the Second Circuit noted that
while other circuits recognize the contrary-to-public-policy ground for vacatur, "we will vacate an
award only upon finding a violation of one of the four statutory bases, or, more rarely, if we find a
panel has acted in manifest disregard of the law."  This statement, which appears to reject the public
policy ground for vacatur, would appear to be *dicta* in view of the fact that the court ultimately
decided the case on manifest-disregard-of-the-law grounds.  *See* Pierre N. Leval, *Judging Under the
Constitution, Dicta About Dicta,* 81 N.Y.U. L. Rev. 1249, 1257 (2006).  Because there is, in any
event, no merit to Defendants' public policy arguments, the Court need not, and does not, decide
what effect, if any, *Porzig* has on Second Circuit law regarding the public policy grounds for vacatur.

[9]  *See St. Mary Home*, 116 F.3d at 45-46 (rejecting argument that public policy requires
permanent discharge of an employee for a single incident of substance abuse in the workplace); *First
Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118
F.3d 892, 897-98 (2d Cir. 1997) (applying the reasoning as in *St. Mary Home*); *DiRussa v. Dean
Witter Reynolds Inc*., 121 F.3d 818 (2d Cir. 1997) (finding that decision not to award attorney fees
did not clearly violate public policies); *Merrill Lynch v. Savino*, 06 Civ. 868 (LAP), 2007 WL
895767, at *16 (S.D.N.Y. Mar. 27, 2007) (rejecting public policy objection because the "public
policy against a wrongdoer's benefitting from his wrongs is not a widely recognized, explicit public
policy"); *Jamaica Buses, Inc. v. Transp. Workers' Union*, *Local 100*, No. 02 CV 2533(SJ), 2003 WL
1621026, at *6 (E.D.N.Y. Mar. 26, 2003) (finding that award reinstating worker terminated for
sexual harassment where worker had no prior incidents and was not put on notice did not violate
public policy); *Technical Career Insts., Inc. v. Local 2110, United Auto Workers*, No. 00 CIV.
9786(RCC), 2002 WL 441170, at *3 (S.D.N.Y. Mar. 21, 2002) (finding no public policy preventing
admission of person who vocalized threats of violence against college, but never acted on them);
*Beth Israel Med. Ctr. v. Local 814, Int'l. Bhd. of Teamsters*, No. 99 CIV. 9828(JSM), 2000 WL

occasions in which courts have found awards to be contrary to public policy have involved awards reinstating employees who were terminated for sexual harassment, but where the employees were repeat offenders and were put on notice that their conduct was unacceptable. *See Newsday, Inc. v. Long Island Typographical Union*, 915 F.2d 840, 843 (2d Cir. 1990); *Consol. Edison v. Util. Workers' Union*, No. 95-1672, 1996 WL 374143, at *3-*4 (S.D.N.Y. July 3, 1996); *see also Brookdale Hosp. Med. Ctr. v. Local 1199, Nat'l Health & Human Serv. Employees Union*, 107 F. Supp. 2d 283, 291-93 (S.D.N.Y. 2000) (remanding award to arbitrator for clarification stating that "it is difficult for this Court to determine whether the Award contravenes the public policy

---

1364367 at *6 (S.D.N.Y. Sept. 20, 2000) (finding that arbitration award did not violate public policy because "the Statute of Frauds is not applicable to collective bargaining agreements"); *Dyno Nobel, Inc. v. United Steel Workers*, 77 F. Supp. 2d 307, 309-10 (N.D.N.Y. Dec. 9, 1999) (denying motion to vacate because award not shown to violate a clearly defined public policy of ensuring safety in the manufacture of explosives); *AT&T Corp. v. Pub. Serv. Enter. of Pa., Inc.*, No. 98CIV6133LAP, 1999 WL 672543, at *5 (S.D.N.Y. Aug. 26, 1999) (finding that proponents failed to show explicit public policy against enforcing a penalty provision); *Cowle v. PaineWebber*, No. 98 CIV. 2560 JSM, 1999 WL 194900, at *5 (S.D.N.Y. Apr. 7, 1999) (rejecting public policy challenge that arbitration was improper forum for certain disputes); *Pepsi-Cola Albany Bottling Co. v. Int'l Bhd. of Teamsters, Local 669*, No. 96-CV-1986 (FJS)(RWS), 1998 WL 315092, at *3-*5 (N.D.N.Y. June 10, 1998) (finding public policy against the performance of safety-sensitive duties by employees who test positive for controlled substances, but upholding award because Department of Transportation Regulations would not prohibit such an award); *N.Y. State Nurses Assoc. v. A.O. Fox Mem. Hosp.*, No. 97-CV-1525 (DRH), 1998 WL 666777 (N.D.N.Y. June 3, 1998) (refusing to vacate award because Union failed to show that award violated public policy supporting medical privilege); *Burka v. N.Y. City Transit Auth.*, No. 85 Civ. 5751 (RPP), 1992 WL 251445, at *5 (S.D.N.Y. Sept. 28, 1992) (finding that claim that "class action settlements 'withstand erroneous application and that they remain as written and approved'" was not explicit public policy); *In re Pan Am. Corp.*, No. 91 CIV. 3862 (KMW), 140 B.R. 336, 341 (S.D.N.Y. Apr. 9, 1992) (rejecting argument that enforcement of award would violate public policy favoring airline safety). It is worth noting that *W.R. Grace* and *United Paperworkers* also ultimately uphold the arbitrator's award as not contrary to public policy. *See W.R. Grace*, 461 U.S. at 766-72 (finding that enforcement of the collective-bargaining agreement would not compromise public policy requiring obedience to court orders or public policy favoring voluntary compliance with Title VII); *United Paperworkers*, 484 U.S. at 373-75 (finding that award reinstating worker who operated a hazardous machine and was found with a marijuana cigarette, did not fall within public policy exception).

against sexual harassment in the workplace without knowing precisely what factual findings support the Arbitrator's recommendation of reinstatement"); *cf. Niagara Mohawk*, 143 F.3d at 47 ("[In *Newsday*,] vacating the second arbitrator's reinstatement had the effect of upholding the first arbitral award.").  In one instance, the Second Circuit vacated a district court's order confirming an award and remanded the case for consideration whether confirmation of an award in which the arbitration panel found fraud would go "against the judicial policy of refusing to 'lend [the court's] power to assist or protect a fraud' . . . ." *Commercial Union Ins. Co. v. Lines*, 378 F.3d 204, 208-09 (2d Cir. 2004) (quoting *Kitchen v. Rayburn*, 19 Wall. 254 (1873)).

In light of the demanding standard for vacating an arbitration award as contrary to public policy, Defendants' objection must fail.  Defendants have failed to point to any explicit, well-defined or dominant public policy prohibiting imposition of joint and several liability for punitive damages, when, as here, two defendants act in concert in violation of state law.  In fact, as this Court has already noted, the Chases point to several Connecticut cases that have allowed such awards. *See supra* p.19.  Therefore, this objection, like all of Defendants' others, misses the mark by a wide margin.

### III.

Having rejected each of Defendants' objections to confirmation of the arbitrator's award, the Court GRANTS Plaintiffs' Motion to Confirm Arbitration Award and Enter Judgment [doc. # 51] and DENIES Defendants' Objection to Motion to Confirm Arbitration Award and Enter Judgment [doc. # 54].  **The Clerk is directed to enter Judgment of Confirmation for the Plaintiffs and to close this file.**

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: October 11, 2007**.